IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROSALEE A. IMEL,                                    CV 07-6204-MA

            Plaintiff,                          OPINION AND ORDER

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

            Defendant.

      **KATHRYN TASSINARI**
      474 Willamette, Suite 200
      Eugene, Oregon  97401

            Attorney for Plaintiff

      **KARIN J. IMMERGUT**
      United States Attorney
      **BRITANNIA I. HOBBS**
      Assistant United States Attorney
      1000 S.W. Third Avenue, Suite 600
      Portland, OR  97204-2902

      **DAVID F. MORADO**
      Regional Chief Counsel
      **DAVID M. BLUME**
      Special Assistant United States Attorney
      Social Security Administration
      701 5th Avenue, Suite 2900 M/S 901
      Seattle, WA  98104-7075

            Attorneys for Defendant

**MARSH, Judge:**

1- OPINION AND ORDER

The matter before the Court is Plaintiff, Rosalee Imel's, Social Security Complaint, seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act). 42 U.S.C. §§ 401-33.

## BACKGROUND

On April 4, 2004, Imel applied for DIB, alleging she became disabled September 7, 2002, due to a combination of degenerative disc disease, Type II diabetes, obesity, dysthymia, and a pain disorder associated with psychological factors. At the time she allegedly became disabled Imel was 35 years old. She attended high school until 10th grade, and then obtained a general education development (GED) credential. Imel worked in the past as a cashier, motel housekeeper, prep cook/cook, certified nursing assistant, daycare worker, retail sales/receiving clerk, and laundry worker. During part of 2003 Imel collected unemployment, allegedly because she was terminated from her part-time job caring for an elderly woman through Disability and Senior Services. Imel testified that at some point in 2003 she decided she was unable to work, so she stopped collecting unemployment and enrolled in Oregon's Temporary Assistance for Needy Families (TANF) program, which provides financial assistance and job training. Imel then worked part-time in 2004

2- OPINION AND ORDER

as a laundry maid at the Lincoln City Rehab Center.  Imel
testified that she quit this job due to back pain and went back
on TANF.

After her application was denied initially and upon
reconsideration, Imel requested a hearing before an
Administrative Law Judge (ALJ).  Imel testified at the hearing
held July 12, 2006, where she was represented by an attorney.  A
second hearing was held February 21, 2007, which Imel did not
attend because the purpose was simply to obtain vocational expert
testimony after the consultative mental evaluation of Imel had
been completed.  On March 20, 2007, the ALJ determined that Imel
was not disabled within the meaning of the Act.  Imel requested
review of that decision by the Appeals Council, which denied her
request, making the ALJ's decision the Commissioner's final
decision from which Imel now seeks judicial review.

On appeal to this Court, Imel alleges the ALJ erred by: (1)
failing to address the opinion of Laura S. Rung, M.D., (2)
failing to provide clear and convincing reasons for discrediting
Imel's own testimony; and (3) failing to give adequate
consideration to the lay witness testimony of Jo Kenyon.  I
address these arguments, below, in the order and context in which
they arise under the five-step sequential evaluation.

The Commissioner avers that the ALJ's findings were
supported by substantial evidence and legally sufficient
reasoning, and therefore he requests that I affirm the decision.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th
Cir. 1995).  To meet this burden, a claimant must demonstrate an
"inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected . . . to last for a continuous
period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).
The Commissioner bears the burden of developing the record.
*DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision
if the Commissioner applied proper legal standards and the
findings are supported by substantial evidence in the record.  42
U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
1995).  "Substantial evidence means more than a mere scintilla
but less than a preponderance; it is such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  *Id.*

The court must weigh all the evidence, whether it supports
or detracts from the Commissioner's decision.  *Martinez v.
Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's

decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## **ALJ'S FINDINGS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

Here, at step one, the ALJ found that Imel had not engaged in substantial gainful activity since her alleged onset of disability. *See* 20 C.F.R. § 404.1520(b).

At step two the ALJ found that Imel had the following "severe" impairments: cervical and lumbar degenerative disc disease; diabetes; obesity; dysthymia; and a pain disorder associated with psychological factors. *See* 20 C.F.R. §§ 404.1504, 404.1520(c).

At step three the ALJ found that Imel's impairments did not meet or equal the requirements of any listed impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so

severe as to automatically constitute a disability. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

The ALJ determined that Imel had the residual functional capacity (RFC) to perform a modified range of sedentary work. The modifications included lifting and carrying no more than 10 pounds occasionally, and less than 10 pounds frequently; standing and walking for two hours during an eight hour workday; occasional climbing, stopping, kneeling, crouching and crawling; no climbing ropes, ladders or scaffolding; no more than simple instructions and judgments should be required; and limited interaction with co-workers, supervisors and the public. *See* 20 C.F.R. §§ 404.1520(e), 404.1545, 404.1567.

At step four the ALJ found Imel was no longer able to perform her past relevant work. *See* 20 C.F.R. § 405.1520(a)(4)(iv).

At step five the ALJ found that Imel was not disabled because she could perform other work as a semi-conductor production worker or a surveillance-system monitor. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## DISCUSSION

The issue in this case is whether substantial evidence supports the ALJ's determination that Imel is not disabled, and whether that determination was based on proper legal standards. Imel contends that the ALJ erred at step five by finding that she can perform other work that exists in significant numbers in the national economy.  She argues that the ALJ wrongly discredited her testimony and the testimony of a lay witness, and failed to address a crucial piece of medical evidence, which, when credited, conflicts with the ALJ's assessment of her residual functional capacity (RFC).

At step five of the sequential evaluation the ALJ must show that the claimant can do other work that exists in significant numbers the national economy.  *Andrews v. Shalala*, 53 F.3d at 1043.  In this case, the ALJ elicited testimony from a vocational expert by posing a hypothetical question that set forth the limitations the ALJ found credible, and therefore included in Imel's RFC.  *Tacket v. Apfel*, 180 F.3d 1094, 1103-04 (9th Cir. 1999).  The VE testified that a hypothetical worker with Imel's age, education, work experience and RFC could, indeed, perform other work existing in significant numbers in the national economy, such as a semi-conductor production worker and

7- OPINION AND ORDER

surveillance system monitor.  Accordingly, the ALJ found that Imel was not disabled.

Imel argues that the RFC assessed by the ALJ is flawed because it conflicts with evidence he ignored, which, according to Imel, shows she has "markedly limited" functional capacity related to her back pain and obesity.  Imel does not advance any argument that the ALJ's assessment of the medical evidence he did traverse was flawed, nor does she specify exactly where the conflict lies between the RFC assessed by the ALJ and the work-related functional limitation allegedly supported by the overlooked medical evidence.  Therefore, I must review the ALJ's RFC assessment in its entirety to determine whether it was flawed and thereby contaminated the step five non-disability determination.

A claimant's RFC is an assessment of what she can still do despite her limitations.  SSR 96-8p.  The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements, to determine the extent to which her medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect her capacity to do work.  *Id*.

**I.   Medical Evidence**

8- OPINION AND ORDER

The RFC assessment must consider and address medical source opinions.  SSR 96-8P.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  *Id*.  The opinion of an uncontradicted treating physician about the nature and severity of a claimant's impairments is entitled to "controlling weight" if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence in the case record.  SSR 96-2p; *see also* 20 C.F.R. § 404.1527(d).

**A.   Mental**

Imel does not contest any of the ALJ's findings regarding her alleged mental impairments.  The ALJ concluded that Imel suffered from Dysthymia (mild depression) and a Pain Disorder Associated with Psychological Factors, which caused only moderate work-related limitations.

The ALJ stated that the consultative psychological examination performed by Rory Richardson, Ph.D., on April 15, 2004, was entitled to "less weight" because it was not consistent with the record as a whole.  In particular, the ALJ pointed out that "the level of functionality opined by Dr. Richardson is wholly inconsistent with [Imel's] conservative and routine treatment history....and not supported by sufficient objective

9- OPINION AND ORDER

evidence...[and] is too reliant upon the claimant's subjective complaints."

Conversely, the ALJ gave "great weight" to the consultative neuropsychological examination performed by Ronald Duvall, Ph.D., on August 16, 2006.  The ALJ concluded that Dr. Duvall's findings were objective, "generally consistent with the record as a whole," and that his "analysis of [Imel's] mental functioning is thorough and identifies significant flaws in the opinions expressed by Dr. Richardson.  In particular, Dr. Duvall did not accept Imel's explanations for why she has failed to follow her treating doctor, John Bohlman, M.D.'s, prescriptions (discussed further below).  Dr. Duvall noted that Imel was highly critical of Dr. Bohlman's services, stating that Dr. Bohlman wouldn't take seriously her claim that she suffered from Fybromialgia because she refused to take the medication he prescribed.  When asked whether Dr. Bohlman told Imel that left untreated her high blood-pressure and diabetes would shorten her life, Imel stated, "I don't really care about his opinion on that."

Dr. Duvall diagnosed Imel with a Pain Disorder Associated with Psychological Factors, such as Depression and Schizoid and Paranoid Personality Traits, and concluded that Imel's "irrational refusal of crucial medical treatment for Diabetes, Hypertension, and Depression" is rooted in "paranoid mistrust of

the motives of those trying to help her...and schizoid self-isolation and inability to modulate her emotions."

Dr. Duvall found Imel to be very emotional during her interview, weeping and talking angrily and loudly in a "heavily somatic" manner, and expressing a "put upon" attitude.  The results of the psychological tests Dr. Duvall administered were consistent with someone with "prominent somatic discomfort and pain."  As a result of these features, Dr. Duvall assessed Imel with a "moderate" work-related functional impairment in the ability to interact appropriately with supervisors, co-workers, and the public.  He explained:

> It is my judgement [*sic*] that she can pay attention, concentrate, learn and recall sufficiently well to perform essential work tasks.  The difficulty she will have is with motivation, given that she regards herself as disabled from working.  Placing her in a work setting would likely result in pain behavior and complaints which would interfere with both work performance and appropriate work relationships. One can deduce from this statement that her level of adaptability is currently very low.

**B.    Physical**

As the ALJ noted, Imel's application for DIB was not supported by her treating physician of many years, John Bohlman, M.D., who advised Imel on April 22, 2003 that her application would likely be denied.  Dr. Bohlman also refused to approve Imel's request for a handicap parking permit.  Though Dr. Bohlman's opinion did not preclude Imel from receiving benefits,

the ALJ stated that it was "compelling evidence contrary to [her] interests in this case."

Dr. Bohlman's chart notes plainly reveal why he believed Imel was not disabled – although she regularly complained of problems associated with her obesity, she was chronically non-compliant with the medical interventions Dr. Bohlman prescribed, and eventually refused to take medication for her diabetes, hypertension and hypothyroidism.  Although Imel persistently complained of low back pain to Dr. Bohlman, she also generally refused pain medication, though on one visit she specifically requested narcotics for "break-through pain."  In spite of Imel's resistence to Dr. Bohlman's attempts to improve her condition she asked Dr. Bohlman to refer her to a back specialist.  Dr. Bohlman referred Imel to Laura S. Rung, M.D., whom Imel saw one time.

Dr. Rung performed a physical examination of Imel in October 2004, and reviewed an MRI scan of Imel's lumbar spine from February 2004.  Afterwards, Dr. Rung prepared a "Consultation Report," in which she listed nine items in an "Impression" section of the report, and four items in a "Recommendations" section.  According to Imel, Dr. Rung's third "impression" which states, "Markedly limited functional capacity secondary to the low back pain and morbid obesity," conflicts with the ALJ's assessment of her RFC.

12- OPINION AND ORDER

Although Imel contends that Dr. Rung's use of the phrase "markedly limited functional capacity" is significant, she does not specify exactly what work-related functional limitation Dr. Rung allegedly assessed here. Instead, Imel argues that this "impression" constitutes a medical source opinion that conflicts with the ALJ's RFC assessment, and the ALJ erred by failing to "explain why the opinion was not adopted." *See* Social Security Ruling (SSR) 96-7 at *7. I disagree.

Dr. Rung's "impression" that Imel was limited by her low back pain and obesity does not appear in the context of a functional capacity assessment, nor is there any evidence that Dr. Rung performed a functional capacity assessment or intended the phrase "markedly limited" to have the legal significance it would have in that context. *See* 20 C.F.R. § 404.1520a. Dr. Rung was not hired by the Social Security Administration to assist in assessing Imel's work-related functional capacity; she saw Imel on a private referral from Imel's primary care physician. Moreover, Dr. Rung did not endorse Imel's disability application. To the contrary, she recommended an increasingly vigorous exercise routine for Imel which she called the "best treatment for chronic low back pain and...hypertension, obesity, and high blood sugars." Dr. Rung recommended that Imel take medication to treat these dangerous conditions, in addition to getting mental

health treatment.  Finally, by Imel's own self-reports she "was more functional when her antidepressant was required as a condition of employment," leading Dr. Rung to recommend requiring Imel to "follow up at the county mental health department, if possible" as a condition of receiving further social services.

The Commissioner contends that even if Dr. Rung did intend to state that Imel was markedly limited in her ability to lift, stand, walk, sit, etc., this limitation would not necessarily preclude Imel from performing sedentary work.  Thus, according to the Commissioner, the ALJ's failure to address this evidence constitutes harmless error, if any, because substantial evidence in the record supports the ALJ's finding that Imel can perform sedentary work.  I concur, although I think the ALJ's failure to expressly address Dr. Rung's report did not result in any error whatsoever.

## II.  Testimonial Evidence

### A.    Imel

Imel contends that the ALJ failed to provide clear and convincing reasons for discrediting her testimony.

The ALJ is required to consider a claimant's testimony regarding subjective symptoms, such as pain or depression.  20 C.F.R. § 404.1529.  However, the ALJ is not required to automatically credit the claimant's allegations, or disability

benefits would be available on demand. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Rather, once the claimant has produced objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptoms alleged, assuming there is no evidence of malingering, the ALJ can only reject a claimant's testimony for clear and convincing reasons, supported by substantial record evidence. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir. 1999).

Examples of clear and convincing reasons include: (1) a claimant's reputation for dishonesty, prior inconsistent statements concerning her symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexpected or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) medical evidence tending to discount the severity of the claimant's subjective claims; and (4) inconsistency between the claimant's daily activities and the degree of disability she alleges. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

In this case, the ALJ gave several reasons to discredit Imel's subjective reasons for not working. First, the ALJ found that Imel's "lack of motivation [is] the driving force behind her inability to return to the workforce." He noted that if Imel

returned to work "she would no longer receive financial support
from the State and her father."  The ALJ pointed to the opinion
of Ronald D. Duvall, Ph.D., an examining psychologist for
Disability Determination Services, who opined that Imel only had
moderate mental functional limitations, meaning she could perform
mental work-related tasks satisfactorily, and her main impediment
was a lack of motivation.

Second, the ALJ found that Imel's activities of daily living
further supported the conclusion that she lacked motivation to
work, yet demonstrated the ability to drive herself around to
visit her father almost daily, grocery shop, and take care of the
twin teenage girls by herself.  Notably, Imel's friend Tiffany
Clark, who filled out a Third Party Function Report, stated that
when she sees Imel she plays cards with her for approximately
five hours and Bingo for three hours.

Third, the ALJ found that Imel's alleged limitations were
inconsistent with the objective medical evidence.  Imel claimed
she could not work due to "my emotions and my pain."
Specifically, Imel claimed she has pain in her neck, shoulders,
legs, arms, hip and back.  Yet she testified that she canceled
doctors appointments because by the day of the appointment the
pain was often gone.  In addition, Imel testified she did not
usually take pain medication due to a religious objection to

16- OPINION AND ORDER

medication, discussed below.  Whatever the reason, the ALJ may properly consider a claimant's ability to manage pain without medication in evaluating the intensity and persistence of a claimant's alleged pain.  *See* 20 C.F.R. § 404.1529(c)(3); *see also Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995).  The ALJ also found that Imel's claimed emotional impediment to working, which she described as being "scared of people with authority" over her, was not based on a medically determinable impairment.  *See* 20 C.F.R. § 404.1508.

Fourth, and finally, the ALJ rejected Imel's testimony in large part due to her failure to follow prescribed medical treatment.  The ALJ found that "Contrary to her physician's advice, [Imel] stopped taking medication prescribed to treat her diabetes, hypertension and depression."  The ALJ noted that Imel claimed her medical non-compliance was based on religious grounds.  However, the ALJ found this explanation "highly suspect due to [Imel's] admission that, at various times throughout the record, she has taken medication for diabetes and depression...[and she admits] to routinely taking medication for hyperthyroidism and back pain."

In her memorandum in support of her complaint (#12), Imel argues that although she has not been "entirely consistent in refusing medication," the ALJ wrongly rejected her testimony on this basis because her inconsistency "fits with her emotional

instability."  Yet, she indicates in this same memorandum that she took thyroid medication because without it she would die, and that she stopped taking diabetes medication because "it did not work," not because of her religion.  In any event, I do not find that Imel is entitled to a waiver of the requirement that all disability claimants follow prescribed treatment.  *See* 20 C.F.R. § 404.1530.

A claimant's failure to follow prescribed treatment will be generally accepted as "justifiable" if acceptance of the prescribed treatment would be contrary to the teachings and tenets of the claimant's religion.  SSR 82-59.  The claimant must "identify church affiliation" and provide a "statement or other information from either church authorities or other members of the religious order...to substantiate that the individual is a member of the church."  *Id*.  Additionally, "the church's position relative to medical treatment (i.e., that healing may be accomplished only through faith and prayer) must ordinarily[1] be documented by obtaining either church literature or a statement from church authorities concerning the teachings and tenets of the church."  *Id*.

---

[1] In Christian Science cases, it is not necessary to develop church teachings since it is well established that such teachings proscribe acceptance of medical treatment. In these cases, a statement by a Christian Science practitioner or church authority verifying the individual's membership suffices.

Imel identified herself as a "Seventh Day Keeping Christian," but she did not provide the requisite documentation of her alleged church affiliation, or the church's position on medical treatment. Testimonial evidence in the record suggests Imel was once affiliated with the Seventh Day Adventist church, which, notably does not proscribe medical treatment. Accordingly, since Imel did not meet her burden of showing a valid religious objection to medication, I need not decide whether there is merit to Imel's contention that her inconsistent practice of this tenant of her alleged religion should be excused on the basis of her "emotional instability."

**B.  Lay Witness**

Jo Kenyon is a "Case Manager for Self-Sufficiency" at the Oregon Department of Human Services. Imel argues that the ALJ failed to give "adequate consideration" to Ms. Kenyon's statements contained in a letter to Imel's attorney, dated May 4, 2006. Specifically, Imel contends that Ms. Kenyon's statements that Imel "has trouble communicating with out [*sic*] becoming agitated and crying and raising her voice" and "has a very low ability to understand and act on instructions" show that Imel is disabled.

Lay witness testimony as to a claimant's symptoms or how an impairment affects her ability to work is competent evidence, which the ALJ must take into account. *See Nguyen v. Chater*, 100

F.3d 1462, 1467 (9th Cir. 1996)(finding the ALJ erred by failing to account for lay witness testimony about a claimant's serious coughing problems); *see also Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). However, medical diagnoses, such as that the claimant has a serious mental impairment as the result of a stroke, are beyond the competence of lay witnesses and therefore they do not constitute competent evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984); *cf. Nguyen*, 100 F.3d at 1467 (distinguishing lay witness testimony about a claimant's symptoms from testimony involving medical conclusions or diagnoses). The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

Here, the ALJ addressed Ms. Kenyon's letter, as follows:

While Ms. Kenyon's statements regarding the claimant's symptoms and limitations may accurately reflect her observations and general perception of the claimant's condition, she does not constitute an acceptable medical and/or vocational source. In addition, Ms. Kenyon concedes she has not been in contact with the claimant for some time. These facts suggest Ms. Kenyon's opinions are at best, questionably reliable. Accordingly, I find Ms. Kenyon's statements add little, if any, material value to the resolution of disability in this case.

Not only do I find these to be germane reasons to discredit lay witness testimony, Ms. Kenyon's statements would not establish that Imel is disabled even if credited. *Nguyen*, 100

F.3d at 1467 (stating that lay witness testimony can never establish disability on its own).

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 19_ day of May, 2008.

<u>/s/   Malcolm F. Marsh</u>
Malcolm F. Marsh
United States District Judge